RIDER, appellant, v. STRYKER.

*Eminent domain — acquiring lands for streets — when title to lands taken vests in public — Constitutional law — validity of chapter* 579, *Laws* 1871.

The constitutionality of chapter 579, Laws 1871, entitled "An act to lay out," etc., Ocean avenue, in the county of Kings, doubted on the grounds, (1) that no compensation is provided for the owner of an estate less than a freehold in lands taken, and (2) that the assessments for compensation for lands taken for an avenue one hundred feet wide through agricultural lands, expenses of commissioners, etc., and for the cost of construction are limited are lands lying within one hundred feet on each side of such avenue.

The act in question does not provide when the title of lands taken for the avenue shall vest in the public, but directs that the commissioners shall lay out

such avenue, which shall form a part of their general plan of streets, and be laid down and designated on the map thereof to be filed by them. In an action by one claiming to be entitled, under a contract with the commissioners for opening such avenue, to the trees growing within its bounds, against the former owner of the fee for cutting such trees, it appeared that before the trees were cut the commissioners had adopted the line of the avenue and directed the preparation of the final assessment, but it was not shown that the action of the commissioners was promulgated or published or that the map required by law had been filed. *Held*, that the appropriation of the land was not shown to be complete, or the title of defendant to have been divested, and a nonsuit was proper.

APPEAL from an order denying a motion to set aside a nonsuit and for a new trial. The action was brought in Kings county by John J. Rider and Ezra W. Conklin against Cornelius S. Stryker to recover the value of certain timber cut down upon and carried away from lands belonging to defendant, which it was claimed had, at the time, been taken for a public avenue. The material facts sufficiently appear in the opinion.

*Benjamin G. Hitchings*, for appellant, cited, as to when defendant's title was divested and as to the validity of chapter 579, Laws 1871, *Bloodgood* v. *M. & H. R. R. Co.*, 14 Wend. 51; S. C., 18 id. 9, 17, 35; *Rexford* v. *Knight*, 11 N. Y. 308; *Smith* v. *Helmer*, 7 Barb. 416; *Baker* v. *Johnson*, 2 Hill, 342; *People* v. *Hayden*, 6 id. 359; *People* v. *Supervisors of Westchester*, 4 Barb. 64; *People* v. *Common Council of Brooklyn*, 22 id. 404; *Boyfield* v. *Porter*, 13 East, 200; *Reynolds* v. *City of Brooklyn*, 49 Barb. 136; *Case* v. *Thompson*, 6 Wend. 634; *Coles* v. *Trustees of Williamsburgh*, 10 id. 659, 666; *Wheelock* v. *Young*, 4 id. 667; *Lyon* v. *Jerome*, 15 id. 569; *Rogers* v. *Bradshaw*, 20 Johns. 735; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *Bennett* v. *Boyle*, 40 Barb. 551; *Mannice* v. *Mayor of N. Y.*, 8 N. Y. 120; *Wetmore* v. *Campbell*, 2 Sandf. 341; *Matter of Wash. Park*, 15 Abb. N. S. 148.

*W. J. Sayers* and *D. P. Barnard*, for respondent.

TALCOTT, J. The plaintiffs are the contractors for the construction of Ocean avenue, under a contract with the commissioners, for the construction of that highway, who were appointed for that purpose by an act of the legislature, passed April 19, 1871. Laws of 1871, chap. 579. The action is brought against the defendant to recover damages for his cutting down and converting to his

own use certain wood and timber upon a parcel of land which is embraced within the bounds of that avenue; and which parcel of land was owned by the defendant in fee simple until such time as it was duly taken and appropriated for the purposes of the avenue. The act in question provided, (section 2) that, "when there shall be any building or part of a building, trees, timber, fences, or other obstructions on the route of the road, the commissioners for making the road may, if practicable, before the commissioners of estimate and assessment shall have made their awards and assessments in relation thereto, contract with the owner or owners thereof for the removal thereof out of the line of said avenue.   And in such case, the agreement for such removal, or a duplicate thereof, duly executed, shall be delivered to the commissioners of estimate and assessment, who shall award to the owner or owners the sum agreed upon for such removal, if any, and also compensation for the land taken, estimated as if no such building, trees, timber, fences, or other thing so contracted to be removed, were upon the same, and shall assess the sums so awarded upon lands benefited as in other cases.   But in case there shall be such buildings, or parts of buildings, trees, timber, fences, or other obstructions upon the route of said avenue, and no agreement shall have been made with the owners for the removal thereof, the commissioners of estimate and assessment shall award to the owners the value thereof, in addition to or as part of the value of the land upon which the same are situated; and the same shall thereupon be subject to the disposal of the commissioners, for making the road for the purpose of removal or sale, as hereinafter provided."

On the 28th day of November, 1871, the plaintiffs entered into a contract with the commissioners for construction, for the construction of Ocean avenue, in a certain manner and according to certain specifications thereto attached.   By one of the specifications it was provided, "the timber and cord-wood within the limits of the road to belong to the contractor."

The plaintiffs also introduced in evidence an assignment executed to them by the commissioners for construction, whereby the latter undertook on the 4th of March, 1872, to assign and set over to the plaintiffs all the claims which the said commissioners as such "have or may have against the defendant" for cutting down and carrying off wood, and leaving stumps in the ground within the limits of Ocean avenue.

The action appears to have been brought to recover of the defendant the value of the wood cut by him on the premises in question, and also the difference in the expense of grubbing out and removing the roots of the trees, which the evidence tended to show was much greater when the trees were cut down and the stumps left than it would have been when the trees were standing, and could be used as levers to tear out the roots.

. The plaintiffs gave evidence tending to show that prior to entering into the contract for the construction of the avenue, they went over the land with a view to make an estimate of the probable expense to them of constructing the avenue, according to the specifications, and that the trees were then standing on the premises in question, and that their estimate was in some measure based upon that fact.

There may be serious doubts in reference to the constitutionality of the act of 1871, providing for the construction of this avenue. It is an act by which the legislature has undertaken to take private property for public purposes. Such an act, to be valid under the constitution, must, on the face of it, provide for just compensation to the party whose land is taken. This must be a real, substantial and sufficient provision, and not merely formal and colorable. In the language of Senator MASON, in the leading case of *Bloodgood* v. *Mohawk Hudson R. R. Co.*, 18 Wend. 9, "the making of this compensation must be as absolutely certain as that the property is taken. It must not be dependent upon any hazard, casualty, or contingency whatever." In the same case the chancellor lays down the rule as follows: "I hold that before the legislature can authorize the agents of the State, or others, to enter upon and occupy or destroy or materially injure the private property of an individual, except in case of actual necessity, which will not admit of any delay, an adequate and certain remedy must be provided, whereby the owner of such property may compel the payment of his damages or compensation, and that he is not bound to trust to the justice of the government to make provisions for such compensation by future legislation. * * * The compensation must be either ascertained and paid to him before his property is thus appropriated, or an appropriate remedy must be provided, and upon an adequate fund."

The only provision for compensation to citizens whose property is taken under the act in question, is the provision contained in this second section of the act which authorized any *freeholder*, whose

land may be taken to apply to the special term of the supreme court in Kings county, for the appointment of commissioners of estimate and assessment, to estimate the compensation to be awarded for lands taken, and assess the same upon lands benefited thereby, without stopping to consider the effect of the circumstance that the remedy is given by the statute only to *freeholders*, and that no provision is made whereby the owner of any lesser estate may compel such estimate and assessment. Since we understand from the case that the defendant is a *freeholder* as to the premises in question, we refer to another circumstance which seems to render it very doubtful whether the provision in question is sufficient under the constitution as interpreted by the court of last resort.

By the same second section of the act the assessment for compensation of lands taken, and the expenses of the commissioners of estimate and assessment, together with counsel fees to the amount of $250, is confined to land lying within one hundred feet of each side of the proposed avenue which is to be itself one hundred feet in width, which one hundred feet on each side of the avenue is also subject to the further assessment to be made by the commissioners of construction for the further expense of constructing the avenue. So that the only provision for compensation offered by the act is a resort to the land lying within one hundred feet of each side of the avenue, which same land is also to bear the entire expense of constructing the avenue. It may well be doubted whether this provision for an assessment, limited as it is, and upon mere agricultural and rural lands, affords that certain remedy, beyond hazard and contingency, and upon an adequate fund which a *bona fide* compliance with the provisions of the constitution demand.

But without further discussing the constitutionality of the act under which it is claimed the defendant's property has been taken, we will proceed to consider the general ground on which the plaintiffs were nonsuited at the circuit. That was upon the objection of the defendant "that it had not been shown that the land had been taken at the time of the cutting of the wood." This was sustained by the judge for a variety of reasons as stated by him, which it is not necessary to consider in detail, as we are of the opinion that the objection was well founded. The act itself does not specifically fix any time when the act of appropriation shall be deemed complete, or any moment when the title

shall be deemed to have passed from the former owner and vested in the public. The precise time when the wood was cut does not appear, but it does appear that it was before the time when the plaintiffs entered into the contract for the construction of the avenue. The defendant had sold the wood standing, as we infer, to other parties in September, 1871, the wood to be cut and removed by the purchaser. And the question is whether the sale in September passed the title, because if the sale and the consequent license to enter and cut at that time were acts which the defendant was competent to make and grant, we do not see how he can be liable in this action. The first section of the act provides that "the commissioners for laying out and mapping the towns of Kings county," shall lay out the proposed Ocean avenue, in conformity with their general plan of streets and roads to be laid out in the execution of their general duties, and the said avenue shall form a part of said plan, and be laid down and designated on the maps thereof to be filed by them. The plaintiffs offered no evidence of any such map. They did prove by the minutes of the proceedings of the said commissioners that in June, 1871, the commissioners adopted the base line of the proposed avenue, and directed the superintendent "to prepare the final assessment in accordance with the same." There was no evidence that these proceedings of the commissioners were ever promulgated, and there is nothing in the law creating the commission, or in the act in question whereby the resolution in question is made definite and irrevocable, or providing that any publicity shall be given to the same. And we do not see why the commissioners might not, at any time before the filing of the map, rescind the resolution or modify it, so as to change the line and thus leave out, of the limits of the proposed avenue, premises which would be embraced within it according to the terms of the resolution adopted in June. See *Commissioners of Washington Park* v. *Barnes*, Court of Appeals, 1874 (Albany *Argus*, April 1, 1874). We are of the opinion that until the map showing what land is taken and appropriated by the commissioners, who are empowered to lay out Ocean avenue, has been duly published and become binding upon the owners of property and upon the public by the filing of the map showing such appropriation according to law, the act of appropriation is incomplete and the title of the private owner has not been divested.

The reference in the act of 1871 to the map and filing is quite

brief, but that act·must be read in connection with the act by which this commission was created, and its powers conferred and duties enjoined, as by the very terms of the act of 1871. ' Those former acts are referred to for that·purpose. The act of 1869, by which this commission was created, and of 1870, by which the former act was amended, are very explicit in regard to the maps to be published by the commissioners, and provide that they shall have a map made, showing the streets and roads to be laid out by them, filed in the office of the clerk of Kings county; and those acts clearly indicate that the title to the property taken shall pass, and the appropriation of property taken be deemed complete only upon the filing of the map according to law. The act of 1869 (chap. 670, § 5) provides that if any buildings shall be erected on the line of any avenue or street, after the filing of the map, no compensation shall be paid to the owner thereof, and the act of 1870 (chap. 609, § 3) contains substantially the same provision, thus showing that the legislature intended that, until the filing of the map as thereby provided, the property should remain in the private owner, to be altered and improved as he should see fit, and that compensation was to be made for all improvements down to the time of filing the map, which was the only notice of the appropriation of the property to public use. We think it clear that a fair construction of the act of 1871, which directs the laying out of Ocean avenue, in substance, incorporates the same provisions as to the acts which shall be held as a definite and final appropriation of land taken for such purpose, so as to bind the owner. We think, therefore, that before it was shown that the land and property of the defendant was taken and appropriated, so as to bind him, it should have been shown that the land in question was embraced in Ocean avenue, as laid down on the map filed by the commissioners. No such map was offered to be proved, either filed or made, and, assuming the map mentioned in the resolution to be the map referred to in the statute, no such map was proved.

This conclusion renders it unnecessary to consider other questions involved in the case, or to determine whether if a regular and final appropriation according to law of the defendant's land has been shown, an action for the cutting of·the timber would have accrued to the commissioners of construction; and, if so, whether they were authorized by law to assign such cause of action.

The order denying a new trial is affirmed. *Order affirmed.*